United States District Court
Southern District of Texas
**ENTERED**
September 03, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| SHINTECH INCORPORATED, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-00112 |
| | § | |
| OLIN CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The parties in this case dispute certain entries on each other's privilege logs. *See* Dkts. 303, 309. On July 25, 2024, I ordered the parties to annotate their privilege logs and provide the challenged documents to the court for in camera review. *See* Dkt. 323. I also permitted the parties to file supplemental briefing. *See id.* I have reviewed the briefing and the documents in question. My ruling follows.

## BACKGROUND[1]

This is a breach of contract case between Plaintiff Shintech Incorporated ("Shintech") and Defendants Olin Corporation ("Olin") and Blue Cube Operations LLC ("Blue Cube"). The contract in question ("2021 VCM Contract") is a supply contract for Defendants' vinyl chloride monomer ("VCM"), which is vital to Shintech's production of polyvinyl chloride resin ("PVC"). Shintech contends that Defendants have ceased supplying the contracted-for VCM in an attempt to increase the price of VCM, and that Defendants owe Shintech various credits under the 2021 VCM Contract.

In late January 2023, Shintech requested a credit note under the 2021 VCM Contract. On March 13, 2023, Olin's Vice President Patrick Schumacher ("Schumacher") disputed Shintech's request for a credit. Schumacher claimed that,

---

[1] All facts recounted in this section come from the publicly available version of Shintech's Third Amended Complaint. *See* Dkt. 288. I express no opinion on the veracity of these facts. I merely recount them as alleged by Shintech.

rather than a credit, it was Shintech that owed Olin money. Schumacher told Shintech that Olin would not provide any more VCM until Olin was paid what it believed it was owed. Schumacher also declined to use the 2021 VCM Contract's dispute resolution procedure, stating instead that any existing product orders were cancelled.

Shintech responded on March 17, 2023, stating that it considered Schumacher's actions to be an anticipatory breach of the 2021 VCM Contract. On March 21, 2023, Shintech invoked the dispute resolution procedure. On April 13, 2023, in anticipation of Defendants' withholding supply, Shintech filed this lawsuit seeking specific performance and injunctive relief. Shintech has amended its complaint several times. Shintech's Third Amended Complaint, the live pleading, asserts claims for breach of contract, money had and received, and unjust enrichment. Blue Cube has counterclaimed for breach of contract and unjust enrichment.

## LEGAL STANDARDS

"In diversity cases such as this, state law applies to claims of attorney–client privilege, while federal law governs whether the items are immune from discovery under the work product doctrine." *Homeland Ins. Co. of N.Y. v. Clinical Pathology Lab'ys, Inc.*, 643 F. Supp. 3d 675, 680 (W.D. Tex. 2022); *see also* FED. R. EVID. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Thus, Texas law governs the application or waiver of the attorney–client privilege, while federal common law governs the work product privilege. *See In re Avantel, S.A.*, 343 F.3d 311, 323 (5th Cir. 2003); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).").

### A. ATTORNEY–CLIENT PRIVILEGE

The attorney–client privilege exists to facilitate free and open communication between attorneys and their clients. *See Paxton v. City of Dall.*, 509 S.W.3d 247, 259–60 (Tex. 2017). In Texas, the attorney–client privilege is governed by Texas Rule of Evidence 503, which states, in relevant part:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client:
>
> (A) between the client or the client's representative and the client's lawyer or the lawyer's representative;
>
> (B) between the client's lawyer and the lawyer's representative;
>
> . . .
>
> (D) between the client's representatives or between the client and the client's representative.

TEX. R. EVID. 503(b)(1).

The Supreme Court of Texas has recently summarized the parameters of the attorney–client privilege under Texas law:

> A communication is "confidential" if it is not intended to be disclosed to third persons other than (1) those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or (2) those reasonably necessary for the transmission of the communication. TEX. R. EVID. 503(a). The presence of third persons during the communication will destroy confidentiality, and communications intended to be disclosed to third parties are not generally privileged. *See id.* Further, the person who holds the privilege—the client—waives it if "the person . . . while holder of the privilege, voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged." TEX. R. EVID. 511(a)(1).
>
> At the core of the privilege is the notion that the communications are "made for the purpose of facilitating the rendition of professional legal services." *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex. 1996). . . . However, the mere copying of legal counsel, in and of itself, does not transform an otherwise nonlegal communication into one made for a legal purpose. *See* Tex. Att'y Gen. Op. No. JC–0233, at 6 (2000).

3

*Univ. of Tex. Sys. v. Franklin Ctr. for Gov't & Pub. Integrity*, 675 S.W.3d 273, 280 (Tex. 2023).

Notably, "the attorney–client privilege does not extend to the disclosure of underlying facts, but merely to the disclosure of attorney–client communications." *In re Tex. Farmers Ins. Exch.*, 990 S.W.2d 337, 341 (Tex. App.—Texarkana 1999, no pet.) (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)). A client "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn*, 449 U.S. at 396 (quotation omitted).

"The party who seeks to limit discovery by asserting a privilege has the burden of proof." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004). "The documents themselves may constitute sufficient evidence to make a prima facie showing of attorney–client . . . privilege." *Id.* But "[t]here is no presumption that documents are privileged, and there is no presumption that a party listed on the privilege log is an authorized person under the rule governing the privilege." *Id.* at 225. "The party asserting a privilege in opposition to a discovery request must establish **by testimony or affidavit** a prima facie case for the privilege, although the party need produce only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 804 (Tex. 2017) (emphasis added) (cleaned up).

### B. ATTORNEY WORK PRODUCT DOCTRINE

The work product doctrine first appeared in the United States Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495 (1947). *Hickman* served as the authority for work product protection until 1970 when the work product doctrine was codified in Federal Rule of Civil Procedure 26(b)(3). Today, the rule provides: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

4

representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A).

> To assert work product protection, the party resisting discovery must show:
>
> (1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; (3) the materials were prepared by or for a party's representative; [and] (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party.

*SEC v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006). As with assertions of attorney–client privilege, the burden is on the party who seeks work product protection to show that its representative prepared the materials at issue in anticipation of litigation or for trial. *See Hodges, Grant & Kaufman v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). "In contrast to the attorney–client privilege, the work product privilege belongs to both the client *and the attorney*, either one of whom may assert it." *Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191, 199 (5th Cir. 2023) (quotation omitted).

The Fifth Circuit has said that work product protection can apply where litigation is not imminent "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (quotation omitted). "[D]etermining whether a document is prepared in anticipation of litigation is a slippery task." *Id.* "It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb. 1981). Nevertheless, "[i]f the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation." *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 18 (N.D. Tex. 2021); *see also El Paso Co.*, 682 F.2d at 542 ("The work product doctrine is not an umbrella that shades all

materials prepared by a lawyer, however. . . . Excluded from work product materials . . . are '(m)aterials assembled in the ordinary course of business.'" (quoting FED. R. CIV. P. 26(b)(3) advisory comm. note to 1970 amendment)).

## DEFENDANTS' CHALLENGES TO SHINTECH'S PRIVILEGE LOG

### A. REDLINE/DRAFT OBJECTIONS

Shintech originally asserted attorney–client privilege over 100 Word documents, attached to emails, that are redlines or drafts.[2] Shintech has since withdrawn its privilege assertion for some of these documents and agreed to produce redacted versions of others. Alas, many redlines/drafts remain challenged.

Defendants argue "[t]here is no basis to withhold a draft or redlined version of a document unless an attorney has directly commented on the actual document," and that attaching "a version of a document . . . to an arguably privileged email does not, in turn, render the attachment privileged." Dkt. 329 at 1. Defendants contend such "documents were prepared in the ordinary course of business." *Id.*[3]

---

[2] SHINTECH-PRIV00865 is an email that has been incorrectly listed on Shintech's privilege log as an attachment.

[3] Shintech points out that it inadvertently marked as work product 16 documents—all created between 2016 to 2019, years before this litigation—that should have been marked as attorney–client privilege. *See* Dkt. 336 at 2 n.1. "Upon receiving Defendants' August 1, 2024 Brief, Shintech corrected certain of its Privilege Log entries inadvertently marked as work product that should have been marked attorney–client privilege." *Id.* at 2. Defendants assert that they "raised that incorrect privilege call with Shintech months ago." Dkt. 338 at 6. Defendants further argue that "Shintech had plenty of time—before this dispute was briefed—to remedy [their privilege log designations]," and they "object to Shintech's last-minute attempt to alter its privilege claims over key documents." *Id.* Yet, Defendants have always known that the work product designation was erroneous because, by Defendants' own admission, they raised the issue "months ago." *Id.* I do not play "gotcha" discovery. I will not decide a privilege dispute based on a typo—not even one that should have been corrected months ago—when *both* sides have *always* understood that the privilege being claimed was attorney–client privilege, as opposed to work product protection. This tit-for-tat is emblematic of everything that is vexing about this litigation. On the one hand, Shintech waited until the last minute to fix its privilege log, while Defendants seeks to exploit an issue on a technicality rather than its merits. I

Shintech retorts that it "is not attempting to shield factual information from discovery simply because it was sent to an attorney. Rather Shintech is withholding draft agreements and redlines reflecting legal advice of" Shintech's General Counsel, Vice President, and Secretary, William David Tidholm ("Tidholm"). Dkt. 336 at 7. In support, Shintech attaches a declaration from Tidholm in which he generally describes "the methods by which he provides legal advice." *Id.*; *see* Dkt. 336-2. "While this declaration provides a wealth of information about the facts and circumstances giving rise to the [2021 VCM Contract], it wholly fails to explain how these facts bring any particular document within the ambit of the attorney–client privilege." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 474 (N.D. Tex. 2004). Rather, Tidholm offers generic assertions about his "practice" or what "was typical" for him. Dkt. 336-2 at 2–3. This will not do. A declaration "is of no probative value if it merely presents global allegations that documents come within the asserted privilege." *DuPont*, 136 S.W.3d at 224. That Tidholm would "[s]ometimes . . . transmit internal versions of . . . draft contract[s]" or "[s]ometimes . . . transmit [his] notes" does not speak to the privileged nature of a specific document on the privilege log. Dkt. 336-2 at 3. Because Tidholm's declaration has no probative value, I must look to see if the documents themselves provide sufficient evidence of privilege.

They do not.

First, because Shintech did not produce documents in their native form, I have no way of knowing who made a particular edit, or whose handwriting is on a given document. I am not suggesting that I or my staff should be combing through native versions of documents to ascertain who made an edit or wrote a comment. Any "attempt to determine [the] existence of privilege absent adequate factual foundation wastes judicial time and resources." *Navigant Consulting*, 220 F.R.D. at 474. Shintech should have made clear on its privilege log whose advice, or

---

do so wish that these parties would devote more of their effort to resolving this litigation on its merits, as it would make it easier for the rest of us to do so as well.

request for advice, is reflected in a given document. This, alone, is sufficient reason to find that these documents do not fall within the attorney–client privilege. *See In re Monsanto Co.*, 998 S.W.2d 917, 932 (Tex. App.—Waco 1999, no pet.) (holding that "a report which does not show its author on its face" does not demonstrate entitlement to the attorney–client privilege).

Second, Shintech seems to believe if a redline/draft reflects changes made based on Tidholm's legal advice, rendered via another mode of communication—such as "meetings, phone calls, or email" (Dkt. 336-2 at 3)—then the document attached to or resulting from that other mode of communication is *also* privileged, *even* when considered in isolation, and even though the legal advice itself is nowhere to be found within the document. That is wrong.

> The mere fact that [Tidholm] was involved with [these redlines/drafts] does not automatically render [them] subject to attorney–client privilege protection. Furthermore, documents prepared to be sent to third parties, . . . even when prepared by counsel, are generally not attorney–client privileged. Finally, the court concludes that the types of edits . . . constitute nothing more than simple editorial changes, which do not qualify for attorney–client privilege protection.

*Entrata, Inc. v. Yardi Sys., Inc.*, No. 2:15-cv-00102, 2018 WL 3055755, at *3 (D. Utah June 20, 2018) (cleaned up). "Although [these] documents contain information that may have been communicated to or from counsel for the purpose of facilitating the rendition of legal advice . . ., neither the documents themselves nor [Tidholm's] declaration are sufficient to enable the court to reach that conclusion." *Navigant Consulting*, 220 F.R.D. at 474.

Third and finally, the vast majority of edits in these documents are business edits—changes to values, headings, spellings, formatting, etc. The attorney–client privilege applies only to communications "made to facilitate the rendition of professional *legal* services to the client." TEX. R. EVID. 503(b) (emphasis added). It is Shintech's burden to demonstrate why the privilege should apply. *See Hodges, Grant & Kaufmann*, 768 F.2d at 721. Shintech has not carried that burden.

The following redlines/drafts must be produced: **SHINTECH987795, -987797, -987800, -987918, -988022, SHINTECH-PRIV00002, -11, -18, -30, -32, -33, -36, -37, -39, -40, -42, -46, -47, -48, -50, -51, -56, -57, -59, -139, -175, -176, -223, -227, -228, -236, -297, -299, -309, -310, -312, -382, -383, -388, -400, -401, -403, -404, -406, -407, -409, -425, -427, -428**.

That does not, however, end the discussion.

Shintech contends that, privileged or not, 62 of the objected-to redlines/drafts are irrelevant. Ten redlines/drafts pertain to legal advice that Tidholm provided to Shintech during negotiation of a separate agreement with Olin, while 52 redlines/drafts relate to agreements with third parties and do not concern Defendants. Shintech asks that, even if I find these documents are not privileged, I "sustain Shintech's relevancy objection and deny production." Dkt. 336 at 9. Curiously, Shintech fails to explain why these documents made it onto the privilege log if they are irrelevant. Regardless, I will preliminarily sustain Shintech's relevancy objection as to the documents that concern only third parties,[4] but *not* the documents that concern Olin.[5]

All discovery disputes begin and end with relevance. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case." (emphasis added)). I will not waste my or my staff's time reviewing dozens and dozens of lengthy and irrelevant documents. Nevertheless, if Defendants can muster a relevance argument as to the redlines/drafts concerning negotiations

---

[4] Based on a review of only the first page of each redline/draft, these seemingly irrelevant documents are SHINTECH983430, -984251, -985569, -985570, -985721, -985724, SHINTECH-PRIV00450, -455, -501, -502, -519, -520, -524, -525, -527, -538, -539, -607, -608, -728, -729, -839, -850, -853, -855, -856, -859, -860, -862, -864, -865, -866, -867, -874, -906, -964, -965, -967, -968, -970, -985, -1084, -1098, -1100, -1120, -1126, -1136, -1186, and -1190.

[5] "Evidence is relevant if . . . it has *any* tendency to make a fact more or less probable." FED. R. EVID. 401(a) (emphasis added). Contracts negotiated between the same parties at the same time as the contract in issue clear the relatively low bar for relevance.

9

with third parties, I will address their privilege objection. As the parties decide how to proceed, they should keep in mind that, if my staff and I are forced to review these documents for privilege, the result is likely to be the same as above.

## B. TIDHOLM OBJECTIONS

Shintech originally withheld or redacted 16 documents sent from Shintech employees to Tidholm—either directly or as a copy—as privileged communications. Shintech also withheld 12 attachments to such emails. Shintech has since agreed to produce unredacted copies of three of these documents, and to produce a redacted copy of another. As to the remaining documents, Defendants object that Shintech's privilege descriptions fail "to demonstrate whether David Tidholm (who acts in both a business role and a legal role at Shintech) was acting as a counsel in the correspondence to invoke attorney–client privilege." Dkt. 329 at 5.

I have reviewed these documents and rule as follows:

### 1. *Documents Not Covered by Attorney–Client Privilege*

- **SHINTECH988006**: No request for or provision of legal services.
- **SHINTECH987788**: Business discussion by Tidholm; no request for or provision of legal services.
- **SHINTECH987952**: No request for or provision of legal services.[6]*
- **SHINTECH988344, -988350**: The information Shintech has redacted are business discussions between Shintech employees. There is no request for nor provision of legal advice. The unredacted version of this document must be produced.
- **SHINTECH986968**: The bulk of this document is communication with an Olin employee. But even the internal portions of this document are simply a business discussion between Shintech employees with a copy to Tidholm. There is no request for nor provision of legal advice reflected in this document.
- **SHINTECH986967**: Although two-sentences of this document are directed to Tidholm, it is only a command for Tidholm to make changes. There is no request for legal advice.

---

[6] Portions of this document are in Japanese (*).

10

- **SHINTECH-PRIV00128**, **-168**, **-170**, **-171**, **-173**, **-220**, **-1050**[7]: Although these documents contain edits and/or handwritten notes, Shintech fails to identify who made the edits or notations. The edits and notes do not themselves contain a request for or provision of legal advice. Because privilege is not apparent on the face of these documents, and because Shintech has otherwise failed to establish the privilege, these documents must be produced.
- **SHINTECH-PRIV00604**: While this document very clearly seeks Tidholm's input, it does not seek legal advice. The information in this document are underlying facts that would have been created anyway. *See Davis*, 636 F.2d at 1043.

2. ***Documents Covered by Attorney–Client Privilege***
    - **SHINTECH985844**, **-988089\***, **-988117**: Contains legal advice from Tidholm.
    - **SHINTECH985609**, **-985612**, **-985615**, **-985618**: Contains a request for legal advice from Taizo Sakamoto ("Sakamoto").[8]
    - **SHINTECH-PRIV00163**, **-164**: This document does not, as Shintech asserts, reflect the advice of counsel. It does, however, contain handwritten notes *requesting* legal advice. Shintech could have saved everyone time by providing a correct description.
    - **SHINTECH-PRIV00482**: Shintech has agreed to produce a copy that redacts Tidholm's legal advice.

C. **NO ATTORNEYS ON COMMUNICATION OBJECTION**

Shintech has withheld 25 documents reflecting communications that do not involve an attorney. Shintech has since withdrawn its privilege claim over nine documents and agreed to produce unredacted copies. I have reviewed the remaining documents. They are all protected from disclosure because they contain legal advice, or are work product prepared in anticipation of litigation:

- **SHINTECH-PRIV00098**, **-99**, **-514\***, **-699**, **-704\***, **-705\***: Forwarded email from Tidholm containing legal advice.

---

[7] According to Shintech's privilege log, the original version of this document is a scan. The scan, however, is of poor quality, and the court cannot read the first set of comments.

[8] This is what the privilege description of this document should have said.

- **SHINTECH-PRIV00470\*, -837\***: Clearly prepared in anticipation of litigation, these documents have been erroneously marked "Attorney Client" when they should have been marked "Work Product."
- **SHINTECH985569, -985570**: *See* note 4 (irrelevant redlines/drafts).
- **SHINTECH986606, -777, -779\*, -780\***: Contains provision of legal advice by Tidholm and request for legal advice by Sakamoto.

D. **ATTACHMENT WITH NO ATTORNEY COPIED OBJECTION**

Shintech has withheld four Word documents attached to an email chain where no attorney is copied. *See* **SHINTECH-PRIV00079, -81, -85, -86**. All four documents are drafts of the 2021 VCM Contract. As with the documents discussed above in Section A, these documents are not privileged. These documents—drafts sent between employees with no attorney copied on the communication—are underlying facts that would have been created irrespective of seeking legal advice. *See Davis*, 636 F.2d at 1043. Because the privilege is not apparent on the face of these documents, and Shintech has otherwise failed to establish the privilege, these documents must be produced.

E. **FORWARDED COMMUNICATION OBJECTION**

Shintech has asserted attorney–client privilege and work product protection over five emails forwarded from Tidholm to Shintech's outside counsel David Salton between March 29–30, 2023. *See* **SHINTECH-PRIV00063** through **-67**. Defendants object that "[a] forwarded communication is not necessarily protected by the attorney–client privilege in its entirety." Dkt. 329 at 4. That is true, but Defendants make no argument as to why these documents—forwarded after a point in time when even Defendants contend litigation was contemplated—are not work product. Because Defendants do not challenge the work product designation of these documents, it makes no difference whether some or all parts of these documents are covered by the attorney–client privilege. But even if Defendants had challenged the work product designation, I would overrule such an objection. Not only were the forwards from Tidholm to Salton—sent in the lead-up to Shintech filing this lawsuit, and after Shintech had invoked the 2021 VCM

12

Contract's dispute resolution procedure—clearly made in anticipation of this litigation, but the underlying emails that were forwarded expressly anticipate this litigation. Shintech may withhold these documents as work product.

### SHINTECH'S CHALLENGES TO DEFENDANTS' PRIVILEGE LOG

Defendants have redacted or withheld 3,675 documents on the basis of attorney–client privilege and/or work product protection. Shintech initially challenged "approximately 70" entries on Defendants' privilege log that it contends are emblematic of other challenges that Shintech would make, were it to assert every possible challenge to the thousands of entries on Defendants' privilege log. Dkt. 332 at 2. Shintech has distilled these challenges into two categories, which are both challenges to work product designations:

> (Category 1): no evidence Defendants reasonably anticipated litigation at the time of the communication;
>
> (Category 2): no evidence the communication contains privileged information and was made outside the normal scope of business or commercial discussions

*Id.* Defendants have since withdrawn their claim of work product over several documents, ultimately providing 53 documents to me for in camera review—27 have been redacted and 26 have been withheld entirely.[9] All of these documents are designated as work product, with three documents also designated as attorney–client privileged. I have reviewed each document and will address Shintech's categories of objections in turn. But first, I will address the three documents that Defendants claim are also covered by the attorney–client privilege.

A.  **DEFENDANTS' CLAIM OF ATTORNEY–CLIENT PRIVILEGE**

The three documents over which Defendants claim attorney–client privilege in addition to work product protection are versions of the same underlying email chain in which Frank Russo ("Russo"), a member of Olin's in-house legal

---

[9] Three of these documents should not have been provided to me for in camera review as Shintech either dropped its challenge or Defendants agreed to produce the document with redactions. *See* **BLUE_CUBE_00162767**, **-187488**, and **-187501**.

13

department, is copied. Defendants previously produced this chain with redactions. *See* **BLUE_CUBE_160726**, **-161597**, **-162064**. Beyond the one email to Russo, the remainder of these documents are *not* protected by the attorney–client privilege. Russo is dropped from the chain and the remaining discussions have nothing to do with seeking or giving legal advice. Accordingly, Defendants may not withhold subsequent emails after Russo is dropped from the chain on the basis of attorney–client privilege. With that settled, I will turn to the real issue: whether the 53 documents qualify for work product protection.

### B. WHEN DEFENDANTS REASONABLY ANTICIPATED LITIGATION (CATEGORY 1)

Shintech contends that Defendants could not have anticipated litigation "until March 17, 2023," when Shintech informed Defendants that it considered their threats an anticipatory breach of the 2021 VCM Contract. Dkt. 332 at 3. Thus, Shintech argues, "the work-product privilege cannot apply" to documents created before March 17, 2023. *Id.* Defendants retort that "[t]he central dispute in this litigation is not Blue Cube's threat to withhold supply of VCM," rather, it "is whether Shintech reported the PVC Net Back accurately and in good faith." Dkt. 338 at 2. Defendants claim they "sought the advice of in-house counsel in early March 2023," and "made it very clear to Shintech that they anticipated bringing the PVC Net Back dispute to court." *Id.*

In support, Defendants provide the sworn declaration of Dustin Manning ("Manning"), an attorney in Olin's legal department since 2018. According to Manning, Schumacher indicated to Manning on March 3, 2023 that "Defendants intended to move forward with litigation against Shintech if the significant issues—which would be outlined in a forthcoming March 13, 2023 letter—were not addressed by Shintech." Dkt. 328-4 at 3 & n.1. Manning's declaration is evidence that Defendants contemplated litigation with Shintech as early as March 3, 2023, but it is not sufficient evidence. Manning's declaration is at odds with Schumacher's deposition, in which Schumacher testified, repeatedly, that his

14

March 13, 2023 threat was merely "a negotiating tactic" and "a bluff" on which he "had no intention of actually following through." Dkt. 332-2 at 5.

In their response, Defendants argue that "[t]he best evidence of when Defendants anticipated litigation is the testimony of their employees and counsel." Dkt. 338 at 2–3. Yet, Defendants fail to address the disconnect between the declaration of their counsel (Manning) and the deposition testimony of their employee (Schumacher). Manning's vague declaration that he "provided legal advice to Mr. Schumacher and other executives regarding the dispute with Shintech" does not, standing alone, serve as compelling evidence that Defendants anticipated litigation with Shintech before March 17, 2023. *Id.* at 3. Defendants have not carried their burden to "provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product." *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014).

Because Defendants have not provided sufficient evidence to establish that they reasonably anticipated litigation before March 17, 2023, the documents that have been objected to on the basis of Category 1 necessarily cannot satisfy the second prong of the test for establishing work product protection. *See Brady*, 238 F.R.D. at 441 (to be protected, "the materials sought [must have been] prepared in anticipation of litigation or for trial"). Thus, these documents—which all pre-date March 17, 2023—must be produced. *See* **BLUE_CUBE_00000275**, **-1119**, **-1122**, **-150305**, **-150342–150344**, **-150346**, **-150490**, **-153186**, **-174310**, **-174312**, **-174313**, **-174316**, **-174321**, **-174327**, **-174329**, **-175403**, **-175404**, **-175414–418**, **-184265**, **-185279**, **-185294**, **-185296**, **-185381–383**, **-185535**, **-187498**, **-187631**, and **-342672**.

C. **WHETHER DOCUMENTS ARE WORK PRODUCT, OR MADE WITHIN THE NORMAL SCOPE OF BUSINESS (CATEGORY 2)**

Shintech contends that the Category 2 documents "were clearly prepared in Defendants' ordinary course of business and largely relate to Defendants'

15

operating results." Dkt. 332 at 5. Defendants retort that just because "these documents were created by business people . . . does not strip them of their work-product protection." Dkt. 338 at 5. Defendants' retort is a generally true statement of law. The test for discerning work product from ordinary business documents makes no mention of the author. Rather, "[i]f the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation." *Jolivet*, 340 F.R.D. at 18. It is at this point, however, that Defendants' claim of work product protection begins to fall apart.

Beyond the documents themselves, Defendants' only support for asserting work product protection over so many documents—nearly all of which have no attorney included—is Manning's declaration. This is what Manning has to say about the documents for which Defendants claim work product protection:

> In my opinion, [these documents] reflect my own mental impressions and Defendants made those communications under the reasonable assumption that the work-product doctrine would shield them from discovery.
>
> These protected communications involve various individuals . . . who, upon information and belief, were acting upon my advice to Mr. Schumacher and Mr. Dias Jorge to investigate the PVC Net Back and related issues in anticipation of litigation with Shintech.
>
> . . . .
>
> The documents identified by Shintech and withheld by [Defendants] are a direct result of this anticipated litigation, and were not created in the regular course of business.
>
> These documents include analyses of Shintech's position and discussions of litigation strategy, among others. These communications should be shielded from disclosure pursuant to the work-product doctrine.

Dkt. 328-4 at 4–5. As with Tidholm's declaration, Manning's declaration amounts to nothing more than a blanket assertion that *thousands* of documents are protected as work product, without ever referencing a single one. That is unacceptable. A declaration "is of no probative value if it merely presents global

allegations that documents come within the asserted privilege." *DuPont*, 136 S.W.3d at 224. Because Manning's declaration has no probative value, I must look to see if the documents themselves provide sufficient evidence of privilege.

After reviewing the documents in question, I make the following rulings:

- **BLUE_CUBE_00160726, -161597, -162064**: On their face, these documents arguably concern this litigation. They are protected by the work product privilege.
- **-160729, -161594, -162075, -162631, -165240, -188631**: The redacted content in these documents clearly concerns this litigation. The work product privilege applies.
- **-168893, -184282, -186247, -186998, -187005, -187187**: These documents strike me as primarily business related. They are not covered by the work product privilege and must be produced.

## CONCLUSION

I recognize that the attorney–client privilege and work product privilege play a critical role in the administration of justice. For that very reason, I and my court staff have spent considerable time and effort in determining if the various documents identified by the parties are protected by the attorney–client or work product privilege. In making my rulings, I have, as the law requires, put the burden on the party seeking the protection of the attorney–client or work product privilege to demonstrate its applicability.

SIGNED this 3rd day of September 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE