United States District Court
Southern District of Texas
**ENTERED**
January 27, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| SHINTECH INCORPORATED, | § § § | |
| Plaintiff. | § § | |
| V. | § § | CIVIL ACTION NO. 3:23-cv-00112 |
| OLIN CORPORATION, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

The court is familiar with the facts of this case. *See Shintech Inc. v. Olin Corp.*, 723 F. Supp. 3d 546, 550 (S.D. Tex. Mar. 18, 2024). Pending before me is a Motion for Partial Summary Judgment filed by Plaintiff Shintech Incorporated ("Shintech"). Dkts. 342 (redacted), 343 (sealed). Shintech's motion concerns the meaning of the term "PVC" as used in the long-term supply agreement between Shintech and Defendant/Counter-Claimant Blue Cube Operations LLC ("Blue Cube") and Defendant Olin Corporation ("Olin") (collectively, "Defendants") for the supply of vinyl chloride monomer ("VCM")—the "VCM Contract."

Shintech seeks a declaration that, as used in the VCM Contract, "PVC" means only "grades of polyvinyl chloride resin." Dkt. 342 at 6. Assuming the court makes such a declaration, Shintech seeks further declarations regarding the proper interpretation of certain pricing provisions in the VCM Contract, and summary judgment as to certain of Blue Cube's counterclaims and affirmative defenses.

## LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Because the proper interpretation of an unambiguous contract is a legal issue, . . . it may appropriately be decided on a motion for summary judgment." *Boudreaux v. Unionmutual Stock Life Ins. Co. of Am.*, 835 F.2d 121,

123 (5th Cir. 1988). "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Here, it is undisputed that Texas law governs the VCM Contract and the interpretation of its terms. *See* Dkt. 342-1 at 7 ("This Contract will be governed by Texas law without reference to its principles of conflict of laws.").

When interpreting a contract under Texas law, "[i]t is not the actual intent of the parties that governs, but the actual intent of the parties *as expressed in the instrument as a whole.*" *Apache Corp. v. Apollo Expl., LLC*, 670 S.W.3d 319, 336 (Tex. 2023) (cleaned up). "An interpretation that gives each word meaning is preferable to one that renders one surplusage." *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 23–24 (Tex. 2015). "No one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (cleaned up). Rather, I must interpret the contract "as a whole." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). In doing so, I "may neither rewrite the parties' contract nor add to its language." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003).

With these settled principles of contract interpretation in mind, I turn to the question of what "PVC" means as used in the VCM Contract.

## ANALYSIS

### A.   THE RELEVANT CONTRACT PROVISIONS

The parties to the VCM Contract are Defendants and Shintech. Specifically, the VCM Contract defines the "Seller" as Blue Cube, "a wholly owned subsidiary of Olin Corporation," and the "Customer" as Shintech. Dkt. 393-2 at 1. The VCM Contract provides that "Olin will guarantee Seller's performance." *Id.* at 3.

The subject of the VCM Contract is the "Product," or VCM. *Id.* at 1. "Product will be delivered via the existing pipelines connecting Seller's VCM plant to Customer's PVC plants in Freeport, Texas. Title and risk of loss pass to Customer

where the pipelines connecting Seller's VCM plant to Customer's PVC production facilities cross Customer's fence line in Freeport, Texas." *Id.* at 2.

The price that Shintech pays Defendants for VCM is set forth in Attachment C, the "VCM Pricing Mechanism." *Id.* at 11. Attachment C provides that the "pricing concept will include all of the components in the integrated PVC chain (ethylene, chlorine, EDC, VCM, and PVC)." *Id.* The parties are to share their "Monthly Total Margin," which is "the net margin from the integrated PVC chain [minus] the sum of the monthly cash cost of the production for all of the components from the PVC Net Back." *Id.* There are two "net back" provisions in the pricing mechanism to account for the profit that Seller makes from caustic soda—a byproduct of manufacturing VCM—and the profit that Customer makes from PVC.

> The monthly PVC Net Back, expressed as dollars per pound of PVC, shall mean:
>
> The weighted average delivered selling prices . . . for the PVC produced by Customer and its U.S. Affiliates (defined below), which is sold during the applicable month in the United States (whose weighted average delivered selling price shall be defined as "Domestic PVC Net Back") and the rest of the world (whose weighted average delivered selling price shall be defined as "Export PVC Net Back"), regardless of whether the PVC is made with Seller's VCM, any other supplier's VCM, or VCM produced by Customer or a Customer Affiliate, minus (i) the applicable sales commissions paid by Customer to unaffiliated trading companies, Customer's freight costs, Customer's terminal costs and Customer's bagging costs associated with delivering the PVC during the applicable month, and (ii) Customer's cost of accounts receivable financing in excess of thirty (30) days . . . .
>
> . . . .
>
> The PVC Net Back shall only include PVC first sold by Customer, or by or through a Customer Affiliate, to a third party that is not a Customer Affiliate.
>
> > **Illustration A:** If Customer sells or transfers PVC to an Affiliate for $0.40 per pound, and that Affiliate then sells the PVC to a third party that is not an Affiliate of Customer for $0.50 per pound, then the sale from the Customer Affiliate to

> the third party that is not an Affiliate of Customer ($0.50) is included in the PVC Net Back.
>
> **Illustration B:** If Customer sells or transfers PVC to an Affiliate for $0.40 per pound, and that Affiliate then sells the PVC to another Customer Affiliate for $0.50 per pound, and the second Affiliate then resells the PVC to a third party that is not an Affiliate of Customer for $0.60 per pound, then the sale from the second Affiliate to the third party that is not an Affiliate of Customer ($0.60) is included in the PVC Net Back.

*Id.* at 16.

Shintech contends that, throughout the VCM Contract, PVC can mean only "grades of polyvinyl chloride resin." Dkt. 342 at 6. Defendants do not dispute that "PVC" *includes* grades of polyvinyl chloride resin. Rather, Defendants propose a broader definition. According to Defendants, "PVC"—as used within the VCM Contract—means "a general use plastic polymer that has wide application in a large variety of industrial materials and goods used in daily life, including vinyl siding and pipes." Dkt. 356 at 22.

## B.   THE MEANING OF PVC IS UNCERTAIN AND DOUBTFUL.

"Contract ambiguity comes in two flavors: patent or latent." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). "A patent ambiguity is evident on the face of the contract. A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Defendants do not explicitly admit that the VCM Contract is patently unambiguous, though that is the implication of Defendants' argument that this court consider "extrinsic evidence to *identify* a latent ambiguity." Dkt. 356 at 17. Shintech seems to believe that Defendants' concession regarding the VCM Contract's patent unambiguity—implied through Defendants' failure to establish a latent ambiguity—satisfies Shintech's summary judgment burden. *See* Dkt. 372 at 6 ("Defendants attempt to avoid summary judgment by arguing a latent ambiguity exists."). But "[a] contract

4

. . . may be ambiguous even though the parties agree [either explicitly or implicitly that] it is not." *URI, Inc.*, 543 S.W.3d at 763. Such is the case here.

In its Motion for Partial Summary Judgment, Shintech contends that "PVC as used in the VCM Contract means grades of polyvinyl chloride resin." Dkt. 342 at 6. Shintech makes this argument at least a dozen times.[1] Yet, the word "resin" appears nowhere within the VCM Contract. More importantly, what constitutes a resin is hotly disputed by the parties. *See* Dkt. 408 at 53 ("There are three sources of evidence that show that Shintech sells as, quote, resin products that have more than just polyvinyl chloride in them."); *see also* Dkt. 357-1 at 5 (sealed); Dkt. 357-3 at 9 (sealed); Dkt. 356-20 at 5 ("[O]ne single additive with a PVC resin wouldn't make a PVC compound."). The summary judgment record establishes that "resin" includes resin *plus something else*. *See* Dkt. 408 at 43 (Shintech's counsel conceding that Shintech includes resins with an additive in the PVC Net Back). So the question becomes: at what point is enough "something else" added that the

---

[1] *See id.* at 9 ("There is only one reasonable interpretation of PVC in the VCM Contract: polyvinyl chloride resin."); *id.* n.8 ("Shintech does not dispute that 'PVC' includes grades of polyvinyl chloride resin."); *id.* at 15 ("Of the parties' proffered interpretations of 'PVC,' only one—polyvinyl chloride resin—is reasonable."); *id.* ("PVC in the VCM Contract means only polyvinyl chloride resin."); *id.* at 16 ("This specifically-identified use of VCM underscores the symbiotic relationship between VCM and PVC, eliminating any reasonable doubt that Blue Cube and Shintech, as VCM and PVC producers respectively, intended PVC to mean anything other than PVC resin in the VCM Contract."); *id.* at 19–20 ("[C]onstruing the term 'PVC' in the VCM Contract to mean only PVC resin and not downstream products containing PVC resin as an ingredient is not only reasonable, it is consistent with the language and context of the VCM Contract."); *id.* at 20 ("Interpreting 'PVC' to mean only polyvinyl chloride resin—the material Shintech manufactures and sells—gives effect to the term in each instance and is the *only* interpretation that harmonizes all provisions of the VCM Contract without rendering any meaningless."); *id.* at 26 ("PVC under the VCM Contract means polyvinyl chloride resin."); *id.* at 27 ("Based on the undisputed fact that Shintech manufactures and sells only PVC resin made from VCM, the Illustrations establish that what is included in the Net Back are sales of the same polyvinyl chloride resin."); *id.* at 32 ("[T]he Court should issue summary judgment declaring that PVC unambiguously means grades of PVC resin."); *id.* at 33 ("PVC unambiguously means grades of polyvinyl chloride resin."); *id.* ("[T]he PVC Net Back provision only includes sales of resin from Shintech or its Affiliates to a non-affiliate third party."); *id.* at 35 ("Shintech properly calculated the PVC Net Back payments by including only sales of PVC resin.").

product should no longer be included in the PVC Net Back? Because there is a vigorous factual and scientific dispute about the dividing line between a resin and a compound, and whether Shintech sells only resin, I cannot construe "PVC" to mean "grades of polyvinyl chloride resin."

I told the parties all of this at the beginning of oral argument on Shintech's motion. Shintech's counsel then told me—contrary to the plain text of Shintech's motion, in which the word "resin" appears a whopping 78 times—that "the delineation between resin and compound" is "a red herring." *Id.* at 33. Despite moving for construction of the term "PVC" as "grades of polyvinyl chloride resin," Shintech's counsel informed me at oral argument that "it's not a question of what PVC is. It's whether or not . . . the PVC [whatever that means] has been produced by Shintech or its affiliates with VCM, whatever the source." *Id.* at 34.

Shintech's counsel then adopted the position at the hearing that "PVC has got to mean PVC made with VCM." *Id.* at 35–36. In other words, "PVC" cannot mean any product "beyond the initial step of the polymerization of the vinyl chloride monomer." *Id.* at 105. That is indeed a more workable definition. But it is not the definition that Shintech proposed in its motion or that was briefed by Defendants. And even that definition—where PVC is defined by *when* VCM is polymerized rather than substance or form—raises questions. It is undisputed that Shintech has always included in the PVC Net Back grades of resin with substances added after the polymerization process, like SE-950W. *See* Dkt. 357-26 at 7 (sealed). That Shintech has always included in the PVC Net Back the sale of resins that include substances unrelated to the polymerization of VCM undercuts Shintech's attempt to define PVC as only those substances related to the polymerization of VCM.

Shintech has the burden of proof on its claims at trial and seeks a judgment from this court. That judgment comes with a burden. That burden is not discharged by Defendants' failure to establish latent ambiguity. *See URI, Inc.*, 543

S.W.3d at 763. Shintech was required to convince this court that "PVC" is susceptible to a certain legal meaning. Shintech has not done that.

## CONCLUSION

I find that the meaning of "PVC" in the parties' VCM Contract is uncertain and doubtful. Because Shintech has failed to demonstrate that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law, I recommend that Shintech's Motion for Partial Summary Judgment (Dkts. 342, 343) be denied.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 27th day of January 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE